Adopted January 26, 1891.

---

LULA AND MARY E. PORTWOOD v. J. C. NEWBERRY ET AL.

No. 6761.

**Deed by Husband for Homestead.** — Husband and wife left their homestead. About one year thereafter the husband sold and by warranty deed conveyed the land upon which he had lived. About four years thereafter he with his wife and children started to return to the land. On the way the husband died. The wife moved from place to place in the State, thence to the State of Mississippi, where she remained twenty months. She returned eighteen or nineteen years after her husband's death, and joined by her only child, a daughter, she sued for the land. She testified she had never abandoned the place, and had continually claimed it as homestead. The defendant pleaded limitation, and that the homestead claim had been abandoned, showing title under the husband. *Held:*

1. The deed of the husband executed after he had left the land evidenced on his part an abandonment of the homestead.

2. The husband's act of abandonment would bind his children in any case, and his wife too if he acted in good faith towards her and not against her will.

3. The testimony of the wife that they never intended to abandon the homestead should not be allowed to control the facts showing actual abandonment if such intent was not known to the purchaser from the husband.

4.  The long absence without claim is evidence of intent on her part to abandon the homestead.

5.  A verdict for the defendant was required by the testimony.

APPEAL from Montague.  Tried below before Hon. F. E. Piner. The opinion gives the facts.  ·

*Stephens & Herbert, Sparks & Smith, Hodges & Walker,* and *Geo. H. Plowman,* for appellants.— 1.  An unauthorized and pretended conveyance of the homestead by the husband alone is a nullity, and does not convey title or color of title which would support the defense of three years limitation.  Const., sec. 50, art. 16; Rev. Stats., art. 560; Thompson v. Cragg, 24 Texas, 597; Rogers v. Renshaw, 37 Texas, 625; Welch v. Rice, 31 Texas, 689.

2.  Homestead rights are lost by an abandonment with intention at the time of removal not to return, and the length of such absence is immaterial and can only be looked to by the jury in ascertaining the intent with which the removal from it was made.  Cline v. Upton, 56 Texas, 320; Gouhenant v. Cockrell, 20 Texas, 96; Shepherd v. Cassiday, 20 Texas, 24.

3.  No act, declaration, or deed made by the husband concerning the conveyance of the homestead not concurred in by the wife can operate as a valid conveyance of the homestead.  Inge & Boring v. Cain, 65 Texas, 75; Coker v. Roberts, 71 Texas, 597.

*Jameson & Chambers,* for appellees.— 1.  Homestead rights may be lost by such long abandonment and continuous acts as to render it inequitable and a fraud upon innocent purchasers for value to reassert it.  Shepherd v. Cassiday, 20 Texas, 24; Reece v. Renfro, 68 Texas, 192; Woolfolk v. Ricketts, 48 Texas, 28; Smith v. Uzzell, 56 Texas, 315.

2.  The rights of the wife are lost when she voluntarily leaves the homestead with the husband when he abandons it, and the husband binds his children by his abandonment.  Smith v. Uzzell, 56 Texas, 315; Reece v. Renfro, 68 Texas, 192.

3.  The warranty in a deed given by the ancestor, whether the sale was rightful or wrongful, binds his heirs and estops them.

4.  Homestead rights do not vest in children.  Tadlock v. Eccles, 20 Texas, 782.

COLLARD, JUDGE.—This suit was brought by Lula Portwood and Mary E. Portwood against J. C. Newberry for the 160-acre pre-emption survey patented to R. B. Portwood September 17, 1863.  The suit was filed 13th of June, 1887.

Defendant pleaded not guilty, and set up statute of limitation of three, five, and ten years.  Plaintiff Lula Portwood replied, setting up her minority.

After introducing the patent it was proved that Mary E. Portwood was the surviving wife of R. B. Portwood, and that Lula was the only surviving child of the marriage. R. B. Portwood and wife lived upon the land as their homestead until in 1863, when, on account of hostile Indians, they left the place and went to Denton County and remained there about one year, when, on acount of the ill health of R. B. Portwood, they moved to San Antonio, where they remained until in 1868, at which time they started back to the homestead in Montague County to resume possession of the same. On the way back R. B. Portwood died at Millican. They had left most of their property on the place in Montague, but Indians had taken the stock and run it off, and at the death of her husband Mrs. Portwood had only enough of property left to pay the funeral expenses of her deceased husband. The Indians still being hostile and dangerous in Montague, and having no means to make a living on the home place, having two small children, she went to Corsicana, Texas, and remained there about five years, keeping a boarding house; thence she went to Ferris, in Ellis County, where she remained, keeping a boarding house, about ten years; thence she moved to Weatherford and remained there about one year; thence she went to Strawn and remained a year; thence to Sulphur Springs, where she stopped about a year; then to Tyler, where she stopped with her relatives; then she went to Mississippi to see her relations and stopped with them about twenty months, when she and her daughter came back to Montague County in 1887.

She testified that it was never her intention to abandon the homestead, but it was always her intention to return as soon as her daughter was educated and her circumstances would permit. She had not acquired any other home or land, and frequently expressed her intention to return to the homestead.

In December, 1864, R. B. Portwood, by warranty deed reciting a consideration of $400, conveyed the land to L. S. Gooding, a fact his wife did not know until he was on his deathbed. Defendant Newberry claims the land by a regular chain of title from Gooding to himself, and he and those under whom he claims have had possession under these conveyances since 1881. It is not our intention to pass upon the question of limitation presented by the pleas, for reasons that will appear further on. The court submitted to the jury the pleas of limitation of ten and three years, and the issue of abandonment. The verdict was general "for the defendant" and judgment was rendered accordingly.

The conclusion of abandonment seems to be irresistible. The fact that the husband intended not to return to the homestead is manifest from his act in conveying the same more than a year after he with his family had left it, and such intention is strongly confirmed by his continued absence and failure to return for four years after his warranty deed was executed. There is the highest character of evidence to show that he did not intend

to return to the homestead; evidence which we think is conclusive of the fact. Smith v. Uzzell, 56 Texas, 316.

The husband's act of abandonment would bind his children in any case, and his wife too if he acted in good faith towards her and not against her will. It has been said that "while he acts in good faith and not against the will of his wife, having alone in view the good of the family of which by nature he.is the recognized head, his power to abandon a homestead ought not to be questioned; and in the absence of proof to the contrary it ought to be presumed when a removal. from a homestead is made that it was made in good faith and with the consent of the wife." Smith v. Uzzell, *supra.* Portwood after he had been gone from his home for more than a year sold it. This, as before stated, is a potent fact that he had abandoned it. His wife willingly left it with him, and there is no evidence to show that she did not willingly concur with him in remaining away from it. Her evidence that they never intended to abandon it should not be allowed to outweigh these facts, especially when such intention is not shown to have been known to the vendee of the husband. Reece v. Renfro, 68 Texas, 194.

There were no acts of either the husband or the wife evidencing an intention to return to the homestead until about four years after he sold it, and until about five years after they left it with the approval and consent of the wife. After this the wife, being a *feme sole* and acting for herself, voluntarily remained away, without any attempt to reclaim the property or to assert her homestead rights, for about eighteen or nineteen years, making the entire absence from it as long as twenty-three or twenty-four years without any act showing to parties interested an intention to re-occupy it. Such a long absence should be conclusive of the intention not to return if absence alone could ever have such effect. Her husband had evidently before his death and at the date of his deed in 1864 abandoned the property as a home, and the conduct of the wife after his death is too conclusive of her intention of abandonment to be doubted. Her long absence from it without claim is evidence of such an intention from the beginning, and it was so construed by the jury. At all events the jury could not have found otherwise. No other verdict than the one returned by the jury on this question could have been found or allowed to stand. The facts are too strong and the absence too long to permit the claim of homestead as set up by her. This being our conclusion, other questions. become unimportant and need not be considered.

The judgment of the court below ought to be affirmed. ·

*Affirmed.* ··