## JENNIE M. BLATCHLEY v. DAKOTA LAND & CATTLE CO., a Corporation, and W. L. Richards.

### (145 N. W. 95.)

**Husband and wife — deed — execution of — homestead — abandonment — action.**

Action by a widow to set aside a deed executed by the husband alone to a tract of land upon which she had never resided, and which deed was executed some four months after the husband himself had abandoned the land as a home.

Evidence examined, and *held* that plaintiff's husband during his lifetime had abandoned his homestead interests in the land in litigation, and that therefore his widow cannot maintain an action to set aside the transfer, although she did not join in the deed.

Opinion filed January 10, 1914.

Appeal from the District Court of Dunn County, *Crawford, J.*
Affirmed.

*Thomas H. Rugh,* for appellant.

The husband is the head of the family and has the right to choose the home, or that place of domicil denominated the homestead, and the actual presence of the wife is not necessary to the inception and preser-

---

Note. — The question in the above case, as to the husband's power without wife's consent to convey premises by his sole deed after abandonment, is discussed in a note in 37 L.R.A.(N.S.) 807. See also notes in 12 Am. St. Rep. 683, and 95 Am. St. Rep. 909.

On the question of the conveyance of a homestead by a husband after abandonment by wife, see note in 8 L.R.A.(N.S.) 565.

vation of the homestead. Rev. Codes, 1905, § 4076; Rosholt v. Mehus, 3 N. D. 514, 23 L.R.A. 239, 57 N. W. 783; Gaar, S. & Co. v. Collin, 15 N. D. 622, 110 N. W. 81.

Even though the wife does not live with her husband on the homestead, or in this state, yet she has her interest in the homestead, and same could not be transferred by mere deed or sale act of husband. Mason v. Derks Lumber & Coal Co. 94 Ark. 107, 26 L.R.A.(N.S.) 574, 125 S. W. 656; Justice v. Souder, 19 N. D. 618, 125 N. W. 1031; Silander v. Gronna, 15 N. D. 552, 125 Am. St. Rep. 616, 108 N. W. 544; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Rosholt v. Mehus, supra; Roberts v. Roberts, 10 N. D. 531, 88 N. W. 289; Gaar, S. & Co. v. Collin, supra; Powell v. Patison, 100 Cal. 236, 34 Pac. 677; American Sav. & L. Asso. v. Burghardt, 19 Mont. 323, 61 Am. St. Rep. 507, 48 Pac. 391; Asher v. Sekofsky, 10 Wash. 379, 38 Pac. 1133; Alt v. Banholzer, 39 Minn. 511, 12 Am. St. Rep. 681, 40 N. W. 830; Gleason v. Spray, 81 Cal. 217, 15 Am. St. Rep. 47, 22 Pac. 551; Smith v. Pearce, 85 Ala. 264, 7 Am. St. Rep. 44, 4 So. 616; Murphy v. Renner, 99 Minn. 348, 8 L.R.A.(N.S.) 565, 116 Am. St. Rep. 418, 109 N. W. 593; Note to Jerdee v. Furbush, 95 Am. St. Rep. 936; Rogers v. Day, 115 Mich. 664, 69 Am. St. Rep. 593, 74 N. W. 190.

Blatchley provided no other home or place of abode for his wife, the plaintiff, and his conveyance of the property without the wife joining is void. And his death cannot validate such transfer. Waples, Homestead, pp. 383, 384; Pipkin v. Williams, 57 Ark. 242, 38 Am. St. Rep. 241, 21 S. W. 433; Cooper v. Cooper, 162 Mich. 304, 127 N. W. 266; 21 Cyc. 557.

Plaintiff's right of action is not barred under § 5054, Revised Codes 1905; that section refers to *conveyances,* and there has been no *valid conveyance* in this case. The pretended transfer being *void,* time will not confirm it. Rev. Codes 1905, § 6686.

Blatchley's grantee had notice of all the facts without plaintiff filing a declaration of homestead, and the grantee knew that Blatchley was married, and the doctrine of *caveat emptor* applies. 10 Cyc. 1054, and cases cited. Security Loan & T. Co. v. Kauffman, 108 Cal. 214, 41 Pac. 467; Justice v. Souder, 19 N. D. 613, 125 N. W. 1029; Styles v. Theo. P. Scotland & Co. 22 N. D. 469, 134 N. W. 708; Barber v.

Babel, 36 Cal. 11; Dunn v. Buckley, 56 Wis. 190, 14 N. W. 67; Pipkin v. Williams, 57 Ark. 242, 38 Am. St. Rep. 241, 21 S. W. 433; Hardman v. Portsmouth Sav. Bank, 10 Kan. App. 327, 61 Pac. 984; McKenzie v. Shows, 70 Miss. 388, 35 Am. St. Rep. 654, 12 So. 336; Phillips v. Stauch, 20 Mich. 369; McDonald v. Sanford, 88 Miss. 633, 117 Am. St. Rep. 758, 41 So. 369, 9 Ann. Cas. 1; Jerdee v. Furbush, 95 Am. St. Rep. 935, note 1.

The husband cannot alienate the homestead without the act and consent of the wife. Bolen v. Lilly, 85 Miss. 344, 107 Am. St. Rep. 291, 37 So. 811; Roberson v. Tippie, 209 Ill. 38, 101 Am. St. Rep. 217, 70 N. E. 584; Adams v. Gilbert, 67 Kan. 273, 100 Am. St. Rep. 456, 72 Pac. 769; Burkhardt v. James Walker & Son, 132 Mich. 93, 102 Am. St. Rep. 386, 92 N. W. 778; Alt v. Banholzer, 12 Am. St. Rep. 683, note; Gleason v. Spray, 81 Cal. 217, 15 Am. St. Rep. 47, 22 Pac. 551.

*W. F. Burnett,* for intervener and respondents.

The homestead here claimed was abandoned; the wife (plaintiff) was never on the land in question, and never at any time had or claimed any interest or estate in the land in question, until after the husband's death. The husband at no time claimed this land as his homestead under the laws of this state. Brokken v. Baumann, 10 N. D. 453, 88 N. W. 84.

Even if plaintiff ever had any claim of right, it is barred. Rev. Codes 1905, § 5054.

The homestead may be abandoned by the husband without the consent of the wife. The land here in question was abandoned for all purposes. Brennan v. Wallace, 25 Cal. 108; Stewart v. Pritchard, 101 Ark. 101, 37 L.R.A.(N.S.) 807, 141 S. W. 505; Beranek v. Beranek, 113 Wis. 272, 89 N. W. 146; Farmers' Bldg. & L. Asso. v. Jones, 68 Ark. 76, 82 Am. St. Rep. 280, 56 S. W. 1062; Wilmoth v. Gossett, 71 Ark. 594, 76 S. W. 1073; Allen v. Hawley, 66 Ill. 164; Vasey v. Township One, 59 Ill. 188; Titman v. Moore, 43 Ill. 169; Inge v. Cain, 65 Tex. 75; Drew v. Wooten, 27 Tex. Civ. App. 456, 66 S. W. 331.

Or where the wife voluntarily joins the husband in the acts of abandonment, she cannot recover. Phillips v. Springfield, 39 Ill. 83; Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024; Jordan v. Godman, 19 Tex. 274; Rockwell Bros. & Co. v. Hudgens, 57 Tex. Civ. App. 504, 123 S.

W. 185; Farmers' Bldg. & L. Asso. v. Jones, 68 Ark. 76, 82 Am. St. Rep. 280, 56 S. W. 1062; Guiod v. Guiod, 14 Cal. 506, 76 Am. Dec. 440; Brennan v. Wallace, 25 Cal. 108; Titman v. Moore, 43 Ill. 169; Williams v. Moody, 35 Minn. 280, 28 N. W. 510; Wilson v. Gray, 59 Miss. 525; Robertson v. Hefley, 55 Tex. Civ. App. 368, 118 S. W. 1159; Inge v. Cain, 65 Tex. 75.

BURKE, J. This is an action by a widow to have set aside a deed executed by the husband alone, to a tract of land upon which she had never resided. The plaintiff was married in 1881 at Cedar Rapids, Iowa, where she and her husband lived until 1894, when they went to Bowdle, South Dakota. While staying at a hotel at the latter place, the husband deserted the wife, stating to her that he was going to look up a location further west. According to her testimony, she did not see him again for a year, when she went to the city of Dickinson, North Dakota, and discovered that he was living upon a ranch near that place. She says that she hired a rig and started out to the ranch, but meeting him upon the road they both returned to Dickinson. According to the wife's testimony, he refused to allow her to return with him, saying that the place was not suitable for her, and she returned to Cedar Rapids, Iowa, where her parents resided. Two or three years later she again returned to Dickinson; this time, as she says, to see her husband on a matter of business and to go to the ranch if he would allow her. Upon this occasion the husband met her in Dickinson and she did not go to the land. During those times the husband was a mere squatter upon the land in question, but later, on September 20, 1899, he filed a homestead entry upon the tract. The wife never visited North Dakota after the two visits above mentioned, and it appears from the evidence that the relations between herself and husband were so strained, for some reason, that they did not live together. On the 14th day of December, 1901, the husband made final proof upon the land and received final receiver's certificate. On October 24, 1901, he sold all of his personal property and left the land with the intent never to return thereto, removing to Iowa and establishing his home there. February 13, 1902, in accordance with a previous understanding, he returned to Dickinson and executed a deed to the premises in favor of the Dakota Land & Cattle Company. In this deed it is stated that he was an unmarried man. After

the execution of the deed he returned to Iowa, living there until the time of his death, on April 13, 1910. Shortly after his return to Iowa, he was committed to an insane asylum and never recovered. The question of his sanity, however, is not before us.

It is the contention of the plaintiff that the deed made by her husband in February, 1902, is void, because she, his wife, did not join therein. The respondents contend that the homestead, if such it was, had been abandoned by the husband prior to the execution of said deed, and that in any event this action is barred under the statutes of limitations, § 5054, Rev. Codes 1905. As we have reached the conclusion that the homestead had been abandoned by the husband prior to the execution of the deed, it will not be necessary for us to pass upon the question of the limitation statute.

(1) The facts are undisputed that the wife was never in her life upon the land now claimed as a homestead. Her husband had resided thereon and proved up as a government homestead, but had sold his personal property and moved from the state some four months before the execution of the deed in question. Thus, under an almost unbroken line of authorities, he, as head of the family, unless acting in bad faith, had voluntarily abandoned the premises, and the land had lost its homestead character. The cases supporting this doctrine are gathered in an excellent note found at page 807, vol. 37, L.R.A.(N.S.), from which we will largely quote.

In Beranek v. Beranek, 113 Wis. 272, 89 N. W. 146, the husband in good faith decided to change his home and rented another. His family refused to accompany him, and upon his alienating the land the court says: "Thus, it is seen that, while the husband may not alienate or encumber his homestead without his wife's consent, he may relinquish or abandon it at will without her consent, or against her wishes. This results from the dependent condition of the wife, and the giving of the husband, as the head of the family, the right to make and select the family domicil. If it be thought there is anything amiss in this condition of things, it is for the legislature, and not the courts, to afford a remedy. Applying the law to the facts presented in this case, we cannot escape the conclusion that the evidence shows a relinquishment and abandonment of the homestead in question by Frank Beranek in his lifetime, binding upon his wife and fatal to the recovery

herein. It is not to be understood that such homestead right can be defeated by the husband abandoning his family and leaving them to shift for themselves. Such was not this case. The husband, in apparently good faith, decided to change his home, rented another house, and sought to move his family thereto. He had an absolute right to do so and thus relieve himself from the disability of this statute. The refusal of the wife to follow him did not preserve the status of the homestead."

In Anderson v. Kent, 14 Kan. 207, the family consisted of a husband and wife, and the wife abandoned the homestead with an intention never to return. The husband sold the furniture with an intent to abandon the premises. Some three weeks later he executed a deed to the premises, which deed was held to be good against an attack by the wife, upon the same grounds as urged in this case.

In Brin v. Anderson, 25 Tex. Civ. App. 323, 60 S. W. 778, the husband changed the location of the homestead without consulting his wife, and the court says: "It is true that he did not consult her in reference to the designation, and she was ignorant of the fact that it had been made until after this suit was brought. And it may be true that he did not make the wisest selection that could have been made, but there is nothing to indicate that he was influenced by any benefits secured or promised to him individually, and not participated in by his wife, or that he was actuated by any feeling of malice, ill-will or spite toward her. If the selection made was disadvantageous to the wife, it was probably more so to the husband, as it is not likely that she would go to and from the several tracts of land in cultivation as often as he would. The fact that some of the land designated as homestead was separate property of the wife is of no importance. If it was impressed with the homestead character, the husband had the right to designate it as part of the homestead; and his doing so, and thereby excluding the land in controversy from his homestead, would not be a fraud upon her."

In Smith v. Uzzell, 56 Tex. 315, the court says: "When the wife voluntarily leaves the homestead with intent never again to return to it, and seeks with her husband a home in a foreign land, . . . whatever right she may have had in and to the homestead exemption is lost. . . . If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw

the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so; but while he acts in good faith, and not against the will of the wife, having alone in view the good of the family, of which by nature and by law he is the recognized head, his power to abandon a homestead ought not to be questioned; and in the absence of evidence to the contrary, it ought to be presumed when a removal from a homestead is made, that it was made in good faith, and with the consent of the wife."

In Portwood v. Newberry, 79 Tex. 337, 15 S. W. 270, it is held that if the wife willingly leaves the homestead with her husband, and remains away for a great number of years, she cannot assert a right of homestead against the grantee of a deed executed by the husband alone shortly after they had left the homestead.  See also  Farmers' Bldg. & L. Asso. v. Jones, 68 Ark. 76, 82 Am. St. Rep. 280, 56 S. W. 1062; Wilmoth v. Gossett, 71 Ark. 594, 76 S. W. 1073; Brennan v. Wallace, 25 Cal. 108; Allen v. Hawley, 66 Ill. 164; Vasey v. Township One, 59 Ill. 188; Finley v. Saunders, 98 N. C. 462, 4 S. E. 516; Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024; Hart v. Randolph, 142 Ill. 521, 32 N. E. 517; Styles v. Theo. P. Scotland & Co. 22 N. D. 475, 134 N. W. 708; Guiod v. Guiod, 14 Cal. 506, 76 Am. Dec. 440; Newbro v. Friar, 131 Mich. 368, 91 N. W. 609.  Stewart v. Pritchard, 101 Ark. 101, 141 S. W. 505, 37 L.R.A.(N.S.) 807, is a well-considered case, written in the year 1911.  In this connection, it must be said that Blumer v. Albright, 64 Neb. 249, 89 N. W. 809, and Collins v. Boyett, 87 Tenn. 334, 10 S. W. 512, seem to be in conflict with the above line of authorities.

Applying the law as above to the facts in this case, we find that a decision rests largely upon the question of the good faith of the husband in deeding his land to defendant.  If it appears that his abandonment of the homestead was prompted by a desire to deprive the wife of a right to the homestead, we might hold that his conduct was an act of bad faith which would defeat such abandonment, but upon the whole evidence we have reached the conclusion that the evidence does not justify such conclusion.  At the time of the trial the husband was dead, and the relations between himself and his wife could only be learned from her testimony.  True, she says that upon each of her trips to Dickinson she offered to accompany the husband to the ranch, and was denied this

privilege, but at those times the husband had not made application for the land, and had no interest whatever therein excepting as a squatter. Although she knew his place of residence for about seven years before the abandonment, she never made any further effort to establish herself upon the land, nor did she file any homestead declaration to apprise the world that she claimed any interest therein. Her own testimony discloses that she had lived with her parents in Cedar Rapids, Iowa, and had disputed there, with certain grantees, property owned by her husband in Iowa. It is thus apparent that she and her husband were not on friendly terms, and the natural conclusion is that they had agreed to separate and live apart. During those eight years she did nothing to prevent her husband from selling the land, and it must be presumed that her determination to claim the same as a homestead was reached later. During all of this time the husband resided alone upon the land and held himself out to the world as a single man. The deed given to this defendant makes that statement under oath, and while there is some testimony that one of the officers of the defendant company, who is now deceased, admitted to plaintiff that he knew that the husband was married, yet this knowledge is practically denied, and anyhow not brought to the formal attention of the defendant company.

After the husband had returned to Iowa, the wife learned of the deed given to the defendant, but no effort was made to recover the land until eight years after she had acquired such knowledge, and during that time the land had increased very rapidly in value.

Our conclusion is that at the time of the execution of the deed in controversy, neither plaintiff nor her husband had any homestead rights whatever in the land, and the title passed absolutely to the defendant. It follows that the judgment of the trial court quieting title in defendant is correct, and is accordingly affirmed.