L. C. LaMaster et al. v. Katie Dickson et al.

No. 647.—Decided March 28, 1898.

**Parol Gift to Wife—Possession and Improvements—Evidence—Declarations by Husband.**

On the issue of title by possession and improvements made in good faith under a parol gift of lands to the wife by her father, declarations of the husband, made after the date of the alleged gift and improvements, in disparagement of his wife's title, and tending to show that the gift was of the right of temporary occupation, rather than of title, were not admissible. (Pp. 595, 596.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Fannin County.

*G. A. Carpenter, Taylor & McGrady,* and *Richard B. Semple,* for plaintiffs in error. Title acquired to land after marriage by means of husband and wife having placed permanent and valuable improvements thereon out of their community earnings and property upon the faith of a parol gift to the wife of the land by her father, is community property. Rev. Stats., arts. 2543, 2968.

Even if the above proposition is not correct, still in such case, the improvments so put upon the land would be community property and the damages for being deprived of the rents and use of the land would be community property. Cameron v. Fay, 55 Texas, 61.

The husband plaintiff having a direct and valuable interest in the subject matter of the suit, at least so far as the improvements and rents and damages are concerned, the declaration and admissions of such husband against interest are admissible as original evidence though the wife be also a party plaintiff and though her separate rights are involved. Simpson v. Edens; 38 S. W. Rep., 474; 72 Texas, 266; 60 Texas, 638; Martel v. Somers, 26 Texas, 556; Keesey v. Old, 82 Texas, 25; Railway v. Fisher, 38 S. W. Rep., 392.

Where the wife is the alleged donee by parol gift of land, and the husband and wife seek to recover of the donor, the same as well as the improvements placed thereon and the rents accruing therefrom, upon the ground that the donor put them in possession and they made permanent and valuable improvements upon the faith of such gift, the acts and declarations of the husband while holding possession thereof and

while improving the same, made in disparagement of title and possession and as tending to show the character of their faith in the possession they have had and in the improvements they are making, are admissible against both husband and wife.    Same authorities.

*Gross & Gross* and *Hale & Hale*, for defendants in error.—The court did not err in rejecting the evidence of M. E. Daniel under the issues, facts, circumstances, and with the parties to this case, as presented on the trial.    Clapp .v. Engledow, 18 S. W. Rep., 146; Clapp v. Engledow, 10 S. W. Rep.. 462; McKay v. Treadwell, et al., 8 Texas, 179; Smith v. Redden, 1 Posey U. C., 364; Blair v. Finlay, 12 S. W. Rep., 983; Reddin v. Smith, 65 Texas, 27; DeGarca v. Galvan, 55 Texas, 57; Etheridge v. Price, 11 S. W. Rep., 1040; Cannon v. Boutwell, 53 Texas, 627.

DENMAN, ASSOCIATE JUSTICE.—Katie Dickson and husband, C. H. Dickson, brought this suit against L. C. LaMaster and the heirs of Charles H. Walcott to recover a certain tract of land, alleging, that said Walcott during his lifetime made a verbal gift of the same to Katie Dickson who was his daughter, and in pursuance of such gift placed her in possession thereof, and she and her husband, while so in possession and upon the faith of such gift, made permanent and valuable improvements upon same, and that after the death of said Walcott his executor LaMaster ejected them therefrom.    After the institution of the suit Katie Dickson died and, her children having been made parties plaintiff in her stead, the husband and father, C. H. Dickson, conveyed all interest that he might have to them, and the suit was prosecuted to judgment in their favor, which judgment having been affirmed by the Court of Civil Appeals, the defendants have brought the case to this court upon writ of error.

The Court of Civil Appeals found the following facts:

"1.    The land in controversy, being 100 acres or more (probably about 125 or 130 acres, but possibly not more than 100) off the east end of a tract of over 600 acres in Fannin County, upon which was the homestead of C. H. Walcott, was given, about the year 1891, to Katie Dickson by her father, who owned it in his own separate right; and though the gift was a parol one, it was nevertheless absolute, and by sufficient description to substantially identify the very land sued for and described in the pleadings and judgment.    There was, however, evidence tending to the contrary, and particularly evidence tending to show that no gift of the land itself had ever been made, but only the free use and enjoyment thereof.

"2.    Dickson and wife, with the knowledge of the donor, took and held possession of and improved the land upon the faith of its being a gift as above found, though there was evidence tending to show that they occupied and improved it in consideration of current and future

use and enjoyment, with notice that no absolute gift had been or would be made.

"3. While so in possession, and in the belief and assurance that an absolute gift had been made, the following improvements, according to the testimony of C. H. Dickson, which was in the main corroborated by his wife, were made: 'Built one house on the place; dug a pool; built hog pasture and hog house, cow pen and cow house; made an addition to the barn and stable; built a chimney; purchased a mantel board; weatherboarded the main residence on the north side, east and west ends; bought wire and run around the main part of the farm; paid for digging a cistern; grubbed the stumps out of about 40 acres of the land, and cleared five acres; fenced in the front yard; set out shade trees; trimmed up a pasture back of the house and burned the brush; and dug two ditches and built a closet on the inside of the main residence; and built a privy. What I did not do myself I hired done, and paid for it. I paid Kirk and Smith $32.25 for building the house; the house cost me in work and material $100. The chimney cost me $50 in material and labor. The mantel board cost me $7.50. The cow lot and house, and hog lot and house, cost me $50. To build the pool cost me in work $25. Improvements and material on house cost me $25. Improvements on front yard and clearing and cleaning up back of the house cost me $15. Privy cost me $5. Paid for wire $15.'

"However, the testimony of several other witnesses tended strongly to rebut this evidence as to the extent, character and value of the improvements, and to reduce the aggregate amount of $350 or $400, as testified to by Dickson and wife, about fifty per cent. The land was worth from $25 to $30 per acre, though there was evidence tending to show a value of $40 per acre or more. The value of the use and occupation was about equal to, if it did not exceed, the value of the improvements as found above, and clearly in excess of what appellant's testimony tended to show the value of the improvements to be.

"We conclude that the verdict is sustained by the evidence in finding that the improvements were permanent and valuable, the value thereof being in reasonable proportion to the value of the land, to-wit, about ten per cent of such value, and enhancing the same to that extent."

On the trial defendants "for the purpose of showing the character of possession by Dickson and wife as bearing on the question of good faith of their claim to the premises and of their occupancy thereof, and to show the circumstances under which they made the improvements," offered to prove by the witness M. E. Daniels as follows: "On October 10, 1893, I was on the train going from Honey Grove to Fort Worth, and then and there met C. H. Dickson on the train. Dickson then told me that he was on his way to Limestone County to get him a place; said he was not going to live at Walcott's any longer; that there was so much confusion there that he had rather live on land and pay rent than to live on Walcott's land free of rent. This occurred before Walcott died." The court sustained plaintiffs' objections to and excluded said

evidence on the ground: (1) that all the improvements were completed prior to October 10, 1893; (2) that, if offered to discredit Dickson, no predicate had been laid; (3) that Dickson's declarations could not affect his wife's title to the property acquired by gift from her father. This court granted writ of error herein under the impression that the Court of Civil Appeals had probably erred in holding that the trial court did not err in excluding such testimony. We are of opinion that the testimony was properly excluded. Plaintiffs in their petition do not rely upon any improvements made after October 1, 1893, as exempting the gift from the operation of the statute of frauds, but expressly allege that "the last improvements the said Katie and her husband put on said land were finished prior to October, 1893." The gift from the father and the possession and improvements by the daughter and her husband completed her right to have specific performance, and no declaration thereafter made by the husband could affect such right. McKay v. Treadwell, 8 Texas, 176. Since the improvements were made in conjunction with and through the husband, it may be that, if such declarations has been made while they were being placed upon the land, they would have been admissible as part of the res gestæ tending to show whether they were relying upon a gift. Neither the pleadings nor the proof show such a case. Nor do we think the fact that the husband may have been interested in the improvements can affect the question. The issue in this case was whether the wife had a right to specific performance. If so, the title would by the decree be vested in her, or her heirs, she being dead. He was not interested in the title, though some right of his as between him and her may have been dependent upon her success, just as would have been the case if he had been a lien-holder. The fact that he saw fit to improve the wife's property may subject him to loss if her title fails, but it does not make him a part owner, within the rule admitting an owner's declaration in disparagement of the title.

The judgment will be affirmed.

*Affirmed.*