## · LON HUDGINS v. HORACE THOMPSON.

### No. 2680. Decided April ·30, 1919.

**1.—Homestead—Abandonment.**

The husband, as head of the family, has the right to abandon the homestead, and having abandoned, to sell and convey it without the wife joining. (Pp. 436, 437.)

**2.—Same—Acquisition of New Homestead.**

To show abandonment of the homestead by the husband, it is not necessary that he acquire a new one. It is sufficient that he removes from the old one and has no intention of returning and occupying it. (Pp. 437, 438.)

**3.—Same—Parol Executory Sale by Husband.**

When the husband agreed to sell and convey the homestead, received part pay therefor, and delivered possession to the purchaser, removing elsewhere with his wife and having no intention to return and occupy it, his abandonment thereof was complete before acquiring a new home; the purchaser taking possession and making valuable improvements had the right to enforce his contract to purchase under the rules governing an ordinary action for specific performance of a parol contract to convey. (Pp. 434-439.)

**4.—Intent—Conveyance to Another.**

Having removed from his former home, after agreeing to convey and deliver possession, teh continuance of his homestead rights therein were dependent entirely on the existence of an intention to return and occupy it. With respect to this intent, his conveyance of it to a third party indicated nothing variant from a conveyance in pursuance of his first agreement. (P. 435.)

**5.—Parol Sale—Specific Performance—Improvements—Rents.**

The purchaser of land under a parol agreement is not precluded from enforcing specific performance thereof on the ground of part payment, possession and improvements by the fact that the improvements made by him were less in value than rent for the period of his occupancy. (P. 439.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Van Zandt County.

Hudgins sued Thompson for specific performance and appealed from a judgment in favor of defendant. He obtained writ of error on affirmance by the Court of Civil Appeals.

*J. Andrew West* and *S. Love West,* for plaintiff in error.—The question of abandonment is one of intention and of fact. It is evidenced by relinquishment of possession with no intention to return. There may be abandonment of a homestead without acquisition of a new one if intention is clear. Length of absence from homestead is immaterial. Intention governs. Moore v. Johnston, 34 S. W., 773; Cline v. Upton, 56 Texas, 319; King v. Harter, 70 Texas, 581; Gouhenant v. Cockrell, 20 Texas, 96; O'Brien v. Woeltz, 94 Texas, 152; Rollins v. O'Farrell, 77 Texas, 94; Davis v. Taylor, 33 S. W., 545.

Homestead rights no longer exist after abandonment. Marler v. Handy, 88 Texas, 421; Goff v. Jones, 70 Texas, 577; Brewer v. Wall, 23 Texas, 586; Mann v. Wilson, 39 Texas Civ. App., 112.

There may be abandonment of a homestead without the acquisition of a new one if the intention is clear. Beck v. Avondino, 68 S. W., 828; Woolfolk v. Rickets, 48 Texas, 28; O'Brien v. Woltz, 94 Texas, 152; Cox v. Harvey, 1 Posey, U. C., 273.

On abandonment husband's contract to convey becomes binding and wife and children are bound if husband acts in good faith and not against wife's will. Portwood v. Newberry, 79 Texas, 337; Roemer v. Myer, 17 S. W., 597; Cosby v. Stimson, 26 S. W., 276; Stewart v. Mackey, 16 Texas, 59; Goldfrank v. Young, 64 Texas, 437; Goff v. Jones, 70 Texas, 577; Marler v. Handy, 88 Texas, 426; Edwards v. Dickson, 60 Texas, 617.

On abandonment property used as a homestead loses its homestead character and the sale contract assumes the form of a parol agreement to sell land not the homestead, and a parol agreement to sell land not the homestead, followed by possession, improvements in good faith and payment or tender of the purchase money takes the case out of the statute of frauds. Davis v. Portwood, 20 Texas Civ. App., 550; Doyle v. First National Bank, 50 S. W., 481; Baker v. Defresse, 21 S. W., 964; Harold v. Sumner, 78 Texas, 583; Wells v. Davis, 77 Texas, 636; Womack v. Womack, 8 Texas, 397.

*Nat M. Crawford* and *Wynne, Wynne & Gilmore,* for defendant in error.

Occupancy and improvements not beyond the rental value of the property does not take the contract out of the statute of frauds. Bradley v. Owsley, 74 Texas, 69; Anna Berta Lodge v. Leverton, 42 Texas, 18; Rose's Notes, page 557.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

In December, 1911, Horace Thompson contracted to sell to Lon Hudgins 40 acres of land in Van Zandt County, which was then occupied by Horace Thompson and his wife, Mattie Thompson, as their homestead, in consideration of $41 cash paid by Lon Hudgins to Horace Thompson, and of two certain vendor's lien notes for $234.50 each, which Lon Hudgins agreed to execute to Horace Thompson, one due in the fall of 1912 and one due in the fall of 1913. Under said contract a deed was to be made to Lon Hudgins to said 40 acres of land by Horace Thompson and Mattie Thompson, and at the date of the contract, Horace Thompson removed from the 40 acres to a tract previously occupied by Lon Hudgins, where Horace Thompson and wife resided, with the wife's consent, until they acquired another homestead, which they were occupying when this case was tried in the District Court. At the date of the contract of sale to him, Lon Hudgins took possession of the 40 acres, where he has since resided, and he has made permanent and valuable improvements on the land, enhancing its value by as much as $75, and he has always been ready to comply with his obligations under the contract. It was not shown that the enhanced

value of the land, due to Hudgins' improvements, exceeded the rental value of the place since its occupancy by Hudgins. Under the contract the deed to Lon Hudgins was to have been made forthwith, and Horace Thompson always assured Hudgins that the deed would be made, but, instead of making the deed to Hudgins, in November, 1912, Horace Thompson and Mattie Thompson conveyed the 40 acres to Frank Thompson, for $550, and shortly thereafter purchased their present homestead. The contract between Lon Hudgins and Horace Thompson was made without the consent of Mattie Thompson, who did nothing to induce Lon Hudgins to believe that she consented to the sale. Frank Thompson took his deed from Horace Thompson and Mattie Thompson with full knowledge of the rights of Lon Hudgins.

This suit was brought by Lon Hudgins, plaintiff in error, against Horace Thompson and wife, and Frank Thompson and wife, defendants in error, for specific performance of the contract of sale, and to recover the title to, and possession of, the 40 acres of land.

The trial judge rendered judgment against plaintiff in error on two conclusions: first, that the 40 acres continued to be the homestead of Horace Thompson and Mattie Thompson until they conveyed same to Frank Thompson; and, second, that the failure to show that the improvements made by Hudgins exceeded the rental value of the 40 acres after he took possession thereof, defeated any right in Hudgins to specific performance of the contract of sale of the land.

The Court of Civil Appeals affirmed the judgment of the court below upon the ground that the wife's consent is just as essential to the abandonment as it is to the alienation of the homestead, and Section A of the Commission of Appeals has recommended that the judgment of the trial court be affirmed, upon the ground that the husband can not lawfully abandon the homestead, without the wife's consent, unless another homestead be acquired.

In our opinion, the facts are conclusive that Horace Thompson abandoned the 40 acres prior to the conveyance to Frank Thompson, and that thereupon Lon Hudgins became invested with the right to compel specific performance of the contract of sale to him, and that the claim of Frank Thompson is subject to such right.

The conduct of Horace Thompson in entering into the contract of sale of the 40 acres, in accepting and retaining part of the purchase price therefor, in surrendering possession to Lon Hudgins, in conveying the land to Frank Thompson and in establishing and maintaining the family residence elsewhere, is inconsistent with any other intention than not to use the 40 acres as a home, after the date of the contract of sale. Had Horace Thompson and wife conveyed the 40 acres to Lon Hudgins, no one would question Horace Thompson's intention from the date of the contract of sale. With respect to such intention, the deed to Frank Thompson indicates nothing variant from a deed to Lon Hudgins.

It is only the homestead which the husband is forbidden to sell by

section 50 of article 16 of the Constitution without consent of the wife. Having once been used for the purpose of a home, the 40 acres retained its homestead character until lost by abandonment.     Judge Stayton admirably condenses the law of homestead abandonment when he says: "Abandonment of property actually homestead can not be accomplished by mere intention; there must be a discontinuance of the use coupled with an intention not again to use as a home to constitute abandonment." Archibald v. Jacobs, 69 Texas, 251, 6 S. W., 178. When neither use nor intention to use as a home exists, nothing is left which can reasonably or justly be held to satisfy the Constitution's definition of a homestead.     After the removal from the 40 acres by Horace Thompson and his family, the application thereto of the homestead exemption was entirely dependent on the intention with which the removal was effected.     Tackaberry v. Bank, 85 Texas, 493, 22 S. W., 151, 299.     The evidence being conclusive that Horace Thompson's intention was clearly not to again use the 40 acres, for home purposes, the essential intention to sustain the exemption was lacking, unless it be true that the head of the family can not divest property of its homestead exemption by bona fide abandonment.

The opinion in Smith v. Uzzell, 56 Texas, 318, 319, distinctly defines the power of the husband to bind the wife, with respect to abandonment of the homestead, in stating: "If, however, the husband, in fraud of the right of the wife and without her consent, should seek by an abandonment to withdraw the homestead from the pale of its exemption given for the benefit of the family, he could have no power to do so; but while he acts in good faith and not against the will of the wife, having alone in view the good of the family, of which by nature and by law he is the recognized head, his power to abandon a homestead ought not to be questioned; and in the absence of evidence to the contrary, it ought to be presumed, when a removal from a homestead is made, that it was made in good faith and with the consent of the wife."

The restraint on alienation by the married man owner is the same with respect to the business homestead as it is with respect to the residence homestead.     Inge v. Cain, 65 Texas, 81, decided that "the husband, without the concurrence of the wife, may divest his place of business of the homestead protection by abandonment, and then himself convey it."

There is no difference between the power of the husband to abandon a part and his power to abandon all of the homestead.     That he alone may in good faith abandon part or all was explicitly declared in Wynne v. Hudson, 66 Texas, 9, 17 S. W., 113, in these words: "To our minds it is too clear that, as to Thomas Hudson, a part, if not all, the property in controversy has lost its homestead character; for it has been rented, not temporarily, but rented, and intended to be rented, permanently, while tenants can be found to occupy it.     Counsel for appellees seem to recognize that this is the true posture of the case as to Thomas

Hudson, but the claim is, that, as the homestead cannot be sold without the consent of the wife, given in the manner prescribed by law, therefore the husband has no power to do any act whereby a part of the homestead will cease to have that character. This, we think, is a mistake. The husband is the natural, as well as legal, head of the family, and it certainly is not true, when he once acquires a homestead more than sufficient for the ordinary purposes of a home and place of business, that he is tied to it for life, unless his wife may consent that a part of it may be used for some other purpose. Nor is it true, if, in good faith, and as he deems best for them who are dependent upon him, he removes from a homestead, with intent never to return to it again, that the homestead character will adhere to the abandoned home until the wife consents that it may cease. What constitutes an abandonment, as matter of law, is easily determined, but its application to particular cases is often difficult. The facts which evidence it must be clear."

To the same effect are Slavin v. Wheeler, 61 Texas, 659, and Rockwell Bros. & Co. v. Hudgens, 57 Texas Civ. App., 504, 123 S. W., 186.

The above cases announce the doctrine which generally prevails. A number of cases from other States are cited in the note to Stewart v. Pritchard (101 Ark., 101, 141 S. W., 505), 37 L. R. A. (N. S.), 807, where it is said: "Although there is some conflict as to the husband's right to abandon the homestead without the consent of the wife, it is generally held that he has such power, and that he may then make a valid conveyance by his sole deed if he acts in good faith."

This court has steadily refused to hold that the acquisition of a new homestead is a condition precedent to the exercise of the power or right of abandonment of the old homestead.

Chief Justice Hemphill pointed out in Gouhenant v. Cockrell, 20 Texas, 97, that the substance of the holding in a previous opinion by himself in Shepherd v. Cassiday, 20 Texas, 24, 70 Am. Dec., 372, was "that the right to an old homestead might be forfeited although a new one had not been acquired, where it had been abandoned with an intention not to return, and this intention was not changed before some opposing right had been legally vested by sale in a third person." At the same time, Chief Justice Hemphill declared that the best evidence of homestead abandonment was that a new and permanent home had been acquired, and, in the absence of a new and permanent home, the old ought not to be held subject to the claims of creditors, unless the proof of "total abandonment with an intention not to return" "be undeniably clear and beyond almost the shadow, at least all reasonable ground, of dispute."

The single question presented by Woolfolk v. Rickets, 41 Texas, 362, was whether a charge was correct to the effect "that a homestead is not lost by abandonment until another has been acquired." The charge was held erroneous under the decisions in Gouhenant v. Cockrell and Shepherd v. Cassiday, and the opinion of Associate Justice Reeves, after

citing those decisions, thus concludes: "The leading proposition of the charge is that a new homestead must be acquired before the old one can be lost by abandonment, when, as has been shown, voluntary abandonment, with a·fixed intention not to return, though a new homestead may not be acquired, will open the property to creditors, and we think,· under like circumstances, the property would be open to purchasers also."

Scott v. Dyer, 60 Texas, 139, again declared that, before acquisition of a new homestead, the old would be considered abandoned on clear and conclusive proof that its use had been discontinued, with the intent not to return.

In Reeves v. Renfro, 68 Texas, 194, 4 S. W., 546, the court, per Chief Justice Willie, said: "It has been frequently held by this court that the homestead right may be lost by abandonment, and that to consti‑ tute abandonment it is not necessary that another homestead shall have been acquired. (Jordan v. Godman, 19 Texas, 273; Smith v. Uzzell, 56 Texas, 315; Woolfolk v. Ricketts, 48 Texas, 28.)"

Judge Gaines had these decisions in mind, when he said in Langston v. Maxey, 74 Texas, 162, 12 S. W., 29: *"If the head of a family by abandoning his residence upon a homestead once acquired, with the in‑ tention of never resuming it, may subject it to forced sale, although he may not have acquired another homestead,* we think for a stronger reason it should be held that a part so abandoned ceases to be exempt from execution, although it may be contiguous to the remaining home‑ stead of which it originally formed a part."

The Dallas Court of Civil Appeals rightly interpreted the language of the Constitution dealing with the renting of the homestead and the acquisition of another homestead in saying: "It was the evident pur‑ pose of the framers of the Constitution, in adopting the provision quoted above, to prevent every renting of the homestead from consti‑ tuting an abandonment. They did not undertake to prescribe what would amount to an abandonment, but simply declared that a renting of the homestead, provided that it be temporary, and a new homestead is not acquired, will not be an abandonment. There is no abandon‑ ment if the renting is merely temporary and if the owner has not ac‑ quired another homestead; but if the renting is not temporary, or if the owner has acquired a new home, the abandonment may be com‑ plete within the terms of the constitutional provision relied on by ap‑ pellants. If it had been intended to change the rule so long estab‑ lished, such intention would have been manifested by a provision de‑ claring that the homestead should not be considered abandoned until a new homestead had been acquired. The doctrine that property which is once a homestead is always a homestead, unless the owner had ac‑ quired another home, can not be accepted at this late day. The right to abandon a homestead without having acquired another can not now be questioned." Beck v. Avondino, 29 Texas Civ. App., 503, 68 S. W., 828, 829.

Upon the 40 acres ceasing to be homestead, plaintiff in error was clearly entitled to enforce his contract to purchase, under the rules governing an ordinary action for specific performance of a parol contract to convey land.

In this case, the purchaser has performed and offered to perform his every contract obligation, and has taken actual possession of the land, and has paid part of the purchase money, and has made substantial improvements in good faith. His right to equitable relief is resisted upon the claim that he failed to prove that his improvements exceeded in value the use of the land.

In Wells v. Davis, 77 Texas, 638, 14 S. W., 237, the donee of land, under a parol gift, sought to sustain her ownership through improvements erected on the faith of the gift, but "the evidence showed that the value of the use of the property during the time of its occupancy by defendant Davis (the donee), and subsequent to its gift to her, exceeded the value of the improvements placed upon it by her." In rejecting the contention that the donee in that case ought not to recover because the use of the land exceeded in value the improvements placed thereon, the court said: "To hold in such cases that the purchaser under a parol sale or gift must be held to account for the value of the use and occupation of the premises is to treat him as a renter or trespasser instead of as a purchaser, and is inconsistent with the theory upon which specific performance has been decreed in such cases."

The Galveston Court of Civil Appeals, in following Wells v. Davis, supra, said: "We hold, therefore, that when a parol sale or donation is made, and the vendee or donee goes in possession of the land with the consent of the vendor or donor, and in reliance upon the contract or promise of the vendor or donor, and with knowledge and without objections from him, makes permanent and valuable improvements upon the land, and of value in reasonable proportion to that of the premises so improved, and occupies the same as his home, in a suit for specific performance by his donee or vendee, the vendor or donor can not set off the rental value of the premises against the improvement; and the vendee or donee under such circumstances must be held and treated as the equitable owner of the land, and can not be considered as the tenant of the holder of the legal title. Wells v. Davis, 77 Texas, 637; Pom. on Spec. Perf., secs. 126-129, and cases cited in the notes to said sections; Young v. Glendenning, 6 Watts, 509." Baker's Executors v. De Freese, 2 Texas Civ. App., 529, 21 S. W., 965.

In La Master v. Dickson, 17 Texas Civ. App., 473, 43 S. W., 911; same case, 91 Texas, 593, 45 S. W., 1, a judgment establishing a parol gift was affirmed on findings that the value of the use and occupation of the land equaled if it did not exceed the value of the improvements.

No good defense being shown to defeat plaintiff in error's right to enforce the contract of purchase of the land sued for, the judgments of the District Court and of the Court of Civil Appeals are reversed and judgment is rendered that plaintiff in error do have and recover of

and from defendants in error the title to, and possession of, the 40 acres of land sued for, subject, however, to a judgment in favor of defendant in error Horace Thompson for the balance due on the purchase price of the land, with foreclosure of vendor's lien, all costs being adjudged against defendants in error.

*Reversed and rendered.*